IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELISSA CALLAHAN, on behalf of herself and all others similarly situated, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CITY OF CHICAGO, a municipal corporation, )<br>)<br>Defendant. ) | Case No. 12 C 362<br><br>The Honorable Matthew F. Kennelly |

## FIRST AMENDED COMPLAINT

### Introduction

1. Plaintiff Melissa Callahan on behalf of herself and all others similarly situated contends that in violation of 42 U.S.C. §1983, the defendant City of Chicago ("City" or "City of Chicago") has acted under color of law to take or confiscate the property interest of plaintiff and class members in the leasehold of their cabs or taxi medallions and deprived them of their right to compensation under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution. By setting lease rates unreasonably high and meter rates unreasonably low, the City of Chicago has deprived the cab drivers of a reasonable return on their investment in operating the cabs under their leases. As set forth in Count I below, the City of Chicago thereby engages in an unconstitutional taking of the leasehold interest in violation of Takings Clause as incorporated into the Fourteenth Amendment. In Count II, plaintiff alleges that by denying plaintiff an opportunity to be heard in the determination of the lease and meter rates or an opportunity to show that such rates should not be applied to her, the City of Chicago has deprived plaintiff of her right to procedural due process under the Fourteenth Amendment. In Count III, plaintiff alleges that the City of Chicago is unjustly enriched to the extent it sets

1

meter rates so low that plaintiff and class members cannot reliably or predictably earn the minimum wage on an average hourly basis for their full time work. Finally, in Counts IV and V plaintiff alleges that the City of Chicago is the employer of plaintiff and class members within the meaning of the Illinois Minimum Wage Law, 820 ILCS 105/3, and the Fair Labor Standards Act, 29 U.S.C. § 203, and is liable for payment of the minimum wage rates set forth in those statutes for the two-year period prior to the filing of this lawsuit under 820 ILCS 105/12.

### Parties

2. Plaintiff Melissa Callahan is a resident of Illinois and formerly a full-time – now a part-time – cab driver.

3. Defendant City of Chicago is a municipal corporation.

### Jurisdiction

4. Plaintiff invokes the jurisdiction of this court under 28 U.S.C. §§ 1331 and 1343 for Counts I and II, invokes the jurisdiction of this court under 28 U.S.C. § 1331 for Count V, and invokes the Court's supplemental jurisdiction under 28 U.S.C. § 1367 for Counts III and IV.

### Facts

5. Plaintiff Melissa Callahan was a full-time cab driver during the period from January 1, 2010 through August 2011.

6. Plaintiff is now a part-time cab driver.

7. She leases her cab from an individual owner who is affiliated with American United Taxi Affiliation, Inc.

8. While she was a full-time cab driver, she earned, on average, less than the minimum wage of $8.25 an hour, which Illinois law applies to all employees in Illinois, including employees of the City of Chicago.

9. The City of Chicago sets the fare which plaintiff as lessee of a cab may collect.

10. The City of Chicago sets the maximum rate that medallion owners may charge plaintiff and other drivers to lease a taxicab.

11. The City of Chicago sets the maximum hours that plaintiff may work.

12. The City of Chicago controls the blocks of time in which plaintiff may work those hours.

### Control of Work

13. The City of Chicago purports not to be an employer of plaintiff.

14. However, the City of Chicago controls the manner in which plaintiff performs her work.

15. The City of Chicago enforces a rule of "courtesy" from plaintiff to passengers.

16. The City of Chicago has no definition of "courtesy" and uses its discretion to regulate every aspect of the interaction between plaintiff and a customer.

17. The plaintiff can be sanctioned, fined, and lose her license if she does not conform to how the City of Chicago in its sole discretion determines she should engage with a customer.

18. Rule 5.08 of the Rules of Public Chauffeurs states: "Chauffeurs shall be courteous to passengers, prospective passengers, and other drivers at all times…Chauffeurs will operate their Public Passenger Vehicles in a safe and courteous manner at all times."

19. The City of Chicago provides an online complaint form to the public to solicit information regarding drivers' behavior and supervise the manner in which plaintiff and other drivers perform their work.

20. Such solicitation by the City of Chicago for information about plaintiff's work performance equals or exceeds the supervision by the City of Chicago of employees of the Chicago Transit Authority.

21. The City of Chicago also determines the manner in which plaintiff may receive compensation.

22. The City of Chicago requires credit card use from machines that work only intermittently and which create hardships on the drivers and interfere with the performance of their work.

23. The City of Chicago reserves sole discretion to determine what is a reasonable charge and override the plaintiff's own judgment as to whether she has selected the appropriate route.

24. The City of Chicago controls the equipment which plaintiff must have to operate the cab.

25. The City of Chicago requires plaintiff to respond to assigned radio calls, whether plaintiff wishes to or not.

26. The City of Chicago requires plaintiff to have reference material immediately available to find the "most direct route" to places of general interest and reserves the right to determine what is the most direct route.

27. The City of Chicago determines what is or is not the most direct route.

28. The City of Chicago provides that any violation of any of its rules is an aggravated offence and may impose a fine or suspend the plaintiff's license or require a training course.

29. The City of Chicago prohibits plaintiff from refusing a fare to any destination, no matter how dangerous the destination at the given hour.

30. Plaintiff may not refuse a fare or decline to take a passenger if her cab is empty except by compliance with detailed regulations to show that plaintiff is "off duty."

31. The City of Chicago requires plaintiff to go to "under served" areas, even though such trips may be inconvenient to plaintiff and cost her revenue.

32. The City of Chicago requires "proper attire" including a "shirt or blouse with sleeves" and reserves the sole discretion to determine what is "proper."

33. The City of Chicago requires plaintiff to conduct a detailed search of her car for items that may be lost.

34. The City of Chicago will soon require drivers to "log in" with the proper affiliate and requires monitoring of the hours that plaintiff works.

35. The City of Chicago requires plaintiff to use cab lines and defer to other cab drivers in an order the City determines.

36. By the acts set forth above, the City of Chicago exercises extensive and pervasive control over the manner in which plaintiff performs her work.

## Confiscation of Property Interest

37. By setting them maximum lease rate that plaintiff and class members may be obligated to pay and determining by ordinance the meter rate, the City of Chicago determines the net compensation that plaintiff and class members receive.

38. The City of Chicago knows or should know that plaintiff and class members typically pay the maximum lease rate.

39. The City of Chicago knows or should know that plaintiff and class members do not have a reasonable opportunity to earn on an average hourly basis an amount equal to the minimum wage for full time work over the course of a year.

40. The low compensation permitted by the City of Chicago requires or has had the effect of requiring plaintiff and class members to work 12-hour shifts or even 24-hour shifts that leave them unreasonably fatigued and increases the likelihood of mistakes and safety risks.

41. Recent amendments to the municipal code outlaw 24-hour shifts.

42. While these amendments will likely contribute to driver and passenger safety, they are also likely to make it even harder to obtain reasonable compensation and they will not eliminate the need to work 12-hour shifts.

43. The City of Chicago provides much higher compensation for other employees of common carriers, such as bus and rail employees of the Chicago Transit Authority.

44. The availability of cheap common carrier service helps to make the City of Chicago more competitive in attracting convention, tourism and other business.

45. By providing such cheap service at the expense of plaintiff and class members, the City of Chicago receives increased tax revenue from conventions, tourism, restaurants, and other business.

46. The City of Chicago also receives five percent of the price of additional medallions.

47. By raising the lease and effectively lowering plaintiff's compensation, the City of Chicago is able to ensure an increasing profit for purchasers of the medallions who receive the maximum lease.

48. Accordingly, by effectively squeezing plaintiff and other leaseholders of medallions or the cabs of the medallion owners, the City of Chicago can and does raise the purchase price of the medallion and its own share of that price.

49. Plaintiff and other drivers have been charged in excess of the maximum lease rates set by the City.

50. Plaintiff and other drivers have complained that they are charged more than the maximum rate for their leases.

51. The City has failed to act to enforce the maximum rate of such leases, and has a conflict of interest in allowing the medallion owners to make an even greater than legal profit.

**Class Action Allegations**

52. Plaintiff seeks to certify a class of all persons who have or had leasehold interests in a cab or a medallion and who work or did work as cab drivers on a full time basis for any period during the two years prior to the filing of this lawsuit and do not or did not earn an amount equal on average to the minimum wage of $8.25 an hour during such period of full-time work.

53. Plaintiff seeks to certify a class of all such persons under Rule 23(b)(3), of the Federal Rules of Civil Procedure under all the counts set forth below.

54. Plaintiff states that the class is too numerous to be joined individually – as the potential class is well over 1,000 persons. There are issues of fact and law common to all class members. The claim of plaintiff is typical of claims of the members of the proposed class. Plaintiff can adequately represent the interests of the class.

## Count I

### (Unjust Taking)

55. The various leases of taxicabs or taxicab medallions held by plaintiff and class members in the period from 2010 to the present constitute a property interest or right of property within the meaning of the Fourteenth Amendment to the United States Constitution.

56. The leases held by plaintiff and class members do not limit or refer to or incorporate the meter rate, which is set independently by ordinance of the City of Chicago.

57. Even for a public purpose, the Fourteenth Amendment incorporates the Takings Clause of the Fifth Amendment and prohibits a taking or confiscation of a property interest without just compensation.

58. By setting a high maximum lease rate and low meter rate, the City of Chicago has deprived plaintiff and class members of a reasonable opportunity to earn compensation on an hourly basis equal to the minimum wage of $8.25 an hour or any other reasonable hourly compensation and thereby has confiscated the reasonable value of the property interest to plaintiff and class members without just compensation.

59. The property interest entitles the plaintiff and class members either to a reasonable opportunity to earn at least the minimum wage or the compensation that other employees of the City of Chicago receive for providing a common carrier service.

60. By the acts set forth herein, and in violation of 42 U.S.C. §1983 the City of Chicago has acted under color of law with a detailed regulatory scheme to deprive the plaintiff of the reasonable and fair value of her property interest in her lease and her right to compensation for the confiscation of the value of that property interest under the Fourteenth Amendment.

WHEREFORE, plaintiff prays this Court to:

    A. Certify the class described in paragraph 52 above under Rule 23(b)(3);

    B. Grant plaintiff and each class member damages or a sum of money that provides them with compensation equal on average to the minimum wage of $8.25 an hour for full time work or such other compensation as this Court deems just compensation for the effective confiscation of the property interest of the plaintiff; and

    C. Grant plaintiff her legal fees and such other relief as may be appropriate.

## Count II

### (Procedural Due Process)

61.    In setting the lease and meter rates which in combination deprive plaintiff and class members of the reasonable value of their property interest in the leases, and otherwise deprive them of a reasonable opportunity to earn at least the minimum wage of $8.25 per hour the City of Chicago provides no meaningful opportunity for plaintiff and others to be heard when it sets the lease and meter rates and no opportunity to show why such group rates should not be applied to them individually.

62.    The City of Chicago does not take testimony or seek the opinion of experts or make any administrative findings or provide any individualized hearing as to what compensation on average the plaintiff and class members are likely to receive and whether the anticipated range of compensation to them on a full time basis is fair and reasonable or even equal to the minimum wage provided for persons employed in Illinois.

63.    By failing to have such a procedure and in violation of 42 U.S.C § 1983, the City of Chicago has deprived plaintiff and class members of a meaningful right to be heard before the

City has taken or confiscated the value of their property interest without the just compensation to which they are entitled under the Due Process Clause of the Fourteenth Amendment, or to show why such rates should not be applied to them.

    WHEREFORE, plaintiff prays this Court to:

        A. Certify the class described in paragraph 52 above under Rule 23(b)(3);

        B. Grant plaintiff and each class member damages or a sum of money that provides them with compensation equal on average to the minimum wage of $8.25 an hour for full time work or such other compensation as this Court deems just compensation for the effective confiscation of the property interest of the plaintiff;

        C. Direct the City of Chicago to provide a fair and independent hearing or fact finding procedure, including the collection of data and the application of objective formulas, for plaintiff and class members to determine lease and meter rates that will not confiscate the value of their leases; or allow plaintiff and class members an opportunity to show that such rates are unreasonable or confiscatory as applied to them; and

        D. Grant plaintiff her legal fees and such other relief as may be appropriate.

## Count III

### (Unjust Enrichment)

64.     Even if plaintiff and class members were to be deemed independent contractors and not employees as set forth in Count IV, plaintiff and class members have conferred a benefit

on the City by providing cheap common carrier service at a level below the compensation received for work by employees entitled to $8.25 an hour.

65. Even if plaintiff and class members were to be deemed to be independent contractors and not employees as set forth in Count IV, the City of Chicago is unjustly enriched by the services rendered by such independent contractors at this level of compensation.

66. If plaintiff and class members did not provide such services, the City of Chicago would have to provide such common carrier services by persons directly employed by the City.

67. Accordingly, the City of Chicago would have to pay a sum considerably greater than the minimum wage if it were obligated to use employees entitled to engage in collective bargaining.

68. The economic and other benefits to the City of Chicago from such service by plaintiff and class members greatly exceed the compensation which the City allows them to receive.

69. The measure by which the City of Chicago is unjustly enriched at the expense of plaintiff and class members is at least the difference between the income that the plaintiff and drivers receive on an hourly basis and the minimum wage that the City of Chicago would have to pay to employees to provide such services or such greater amount that the Court may determine.

WHEREFORE, plaintiff prays this Court to:

    A. Certify the class described in paragraph 52 above under Rule 23(b)(3);

    B. Order the City of Chicago to reimburse or make whole the plaintiff and each class member with the sum of money which provides each of them with compensation equal on average to the minimum wage of $8.25 an hour for

        full-time work they perform or have performed or such other compensation as is necessary to prevent the unjust enrichment of the City; and

    C. Grant plaintiff such other relief as may be appropriate.

## Count IV

### (Violation of Illinois Minimum Wage Law)

70. As set forth above, the City of Chicago controls the rate of compensation paid to plaintiff and class members and the manner in which they perform their work, including the relationship of driver to customer, in minute particulars.

71. The City of Chicago receives substantial value from the service provided by plaintiff and class members in providing a common carrier service on the City's behalf.

72. By the facts set forth herein, the plaintiff and class members are and have been in an employment relationship with the City of Chicago during the period covered by this complaint.

73. Plaintiff is an employee of the City of Chicago within the meaning of 820 ILCS 105/3 and not subject to any of the exclusions of that statute.

74. The City's failure to pay the minimum wage of $8.25 an hour due to plaintiff and class members is a violation of 820 ILCS 105/4.

WHEREFORE Plaintiff prays this Court to:

    A. Certify the class proposed in paragraph 52 above under Rule 23(b)(3);

    B. Grant plaintiff and class members their legal damages or reimbursement up to an amount necessary to provide plaintiff and class members the sum of $8.25 an hour

    for each hour worked by them, not to include any tips or gratuities that plaintiff and class members may have received;

C. Pursuant to 820 ILCS 105/12(a), grant plaintiff and class members 2% of the difference between the hourly wage they earned and $8.25 an hour for each month these underpayments have gone unpaid;

D. Direct the City of Chicago to maintain such employment status until the City adopts a regulatory scheme that does not control the manner in which plaintiff and class members may perform their services or may genuinely act as independent contractors; and

E. Grant plaintiff her legal fees and costs.

## Count V

### (Violation of Fair Labor Standards Act)

75. As set forth above, the City of Chicago controls the rate of compensation paid to plaintiff and class members and the manner in which they perform their work, including the relationship of driver to customer, in minute particulars.

76. The City of Chicago receives substantial value from the service provided by plaintiff and class members in providing a common carrier service on the City's behalf.

77. By the facts set forth herein, the plaintiff and class members are and have been in an employment relationship with the City of Chicago during the period covered by this complaint.

78. Plaintiff is an employee of the City of Chicago within the meaning of 29 U.S.C. § 203 and not subject to any of the exclusions of that statute.

79. The City's failure to pay the minimum wage of $7.25 an hour due to plaintiff and class members is a violation of 820 ILCS 105/4.

WHEREFORE Plaintiff prays this Court to:

A. Certify the class proposed in paragraph 52 above under Rule 23(b)(3);

B. Grant plaintiff and class members their legal damages or reimbursement up to an amount necessary to provide plaintiff and class members the sum of $7.25 an hour for each hour worked by them, not to include any tips or gratuities that plaintiff and class members may have received;

C. Pursuant to 29 U.S.C. § 216(b), grant plaintiff and class members an additional amount equal to that described in subsection B above as liquidated damages;

D. Direct the City of Chicago to maintain such employment status until the City adopts a regulatory scheme that does not control the manner in which plaintiff and class members may perform their services or may genuinely act as independent contractors; and

E. Grant plaintiff her legal fees and costs.

Dated: June 5, 2012                                        Respectfully submitted,


    /s/ Thomas H. Geoghegan
One of the Attorneys for Plaintiff

Thomas H. Geoghegan
Michael P. Persoon
Sean Morales Doyle
Carol T. Nguyen
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street
Suite 711
Chicago, IL 60602
(312) 372-2511
admin@dsgchicago.com